Thank you. Good morning. My name is Anne Traum. I'm representing Clifford Buchanan. I would like to reserve two minutes for rebuttal, and I will try to keep my eye on the clock. This court certified two issues in this appeal. The first is whether Buchanan exhausted the factual basis for his claim that he expressed to trial counsel a desire to appeal. Because Buchanan exhausted that issue in state court, there is no need to reach the second issue, which is whether the court below is required to consider the Kelly option or now the Rhines option, which is a stay-in-advance procedure to allow Buchanan to return to state court to exhaust. We ask this court to find that Van Wonen is exhausted and to remand the district court to review that claim on the merits, which it never has done, and for an evidentiary hearing so that he can prove up the allegations that he has alleged. What does it mean that he exhaust a factual allegation? My understanding is one doesn't have to exhaust facts. Exactly. I mean, you can't. Here he did present the factual allegation to the state Supreme Court in some manner. But more generally, he said he was obviously from the beginning complaining that the lawyer had not fulfilled his duties with respect to protecting his appeal. And he said it in various ways. But at one point, he said, without my consent, as to which a refusal of a direct order is certainly a subcategory. So how specific did he have to be? Well, I think that that was sufficient what he alleged in his post-conviction petition in the state district court, which was that he alleged that counsel was ineffective for failing to appeal, for filing a notice of appeal. He also alleged, which was then sort of the standard at the time under Lozada, which is that he failed to, that he did that without his consent, which I agree. That in itself alleges a factual basis for a Roe versus Flores-Ortega claim. And for example, if this is happening before Roe versus Flores-Ortega, but it is a claim that he was ineffective for failing to file a notice of appeal. And more generally, for doing whatever he should have done with regard to protecting his appeal. Which is his, all of his claims are about this basically the same thing, which says I was unhappy, I asked what could be done, I was told nothing could be done, and he did it, he did nothing without my consent. But his original petition didn't say I asked it to be done. But it didn't say the opposite either. It just said something more general than that. He said that he was unsatisfied. On page 119 of the petition, he says, I was not satisfied with the sentence because he thought he would be getting 10 years, not 70 years. I asked counsel what could be done, and he told me that nothing could be done. So that certainly sets up, what is your option after sentencing? Well, the option is to appeal. And that conversation that he relates in his petition sets it up. But I mean, much more explicitly, by the time he gets completely shunted out of any meaningful process at the state district court level, he submits his petition and he gets the order from the state court telling him that the DA is ordered to respond. 10 months later, he files, or a year later, really, he files a motion that says, I never got anything. You need to order the DA to respond. Well, in the meantime, what had happened was the court had had a quote unquote hearing where he heard arguments of counsel. But this is on page 139 of the record. You can tell this. But he denied that hearing was where the petitioner was not represented. He was not present. The court made its order in an order drafted by the DA. All of this happened, basically, as an ex parte proceeding. And only much later, when a petitioner said that he neither got the state's response, so he had never had an opportunity to respond, he didn't get the state's order denying his petition. So he couldn't really react to that. Only then was his case sort of denied, and then he appealed. So it was in front of the Nevada Supreme Court that he then tried to develop more. And that's where he filed the motion for leave to proceed in proper person, which was necessary under Nevada's appellate rules. He could not file something. He could not file a brief in the Nevada Supreme Court without leave of court. He filed that motion pursuant to Nevada rule of appellate procedure 46B. He cited that in his motion, which is at 162, I believe. And that's where he said, if I would like to file a brief, I would like you to set a briefing schedule, and this is what I would expect to raise on appeal. And that's when he said that his counsel was ineffective for refusing to file an appeal, quote, even though this appellant requested counsel to do so. Now, I don't see how you can be more explicit factually than that. And then he also supplemented the record with the letter that counsel had written to his mother, in which he says, I suggest that you talk to somebody else who thinks that your son has appellate rights, which is further evidence of his factual claim. Now, I don't know what else he was supposed to do, either as a general person who's trying to get some process, or under Nevada's process rules. Plus, the Nevada Supreme Court did not ground that he didn't meet Flores-Artega. It denied it on the erroneous belief that he had waived his right to appeal his sentence, which he had not done. Correct. That's correct. So it didn't actually consider a federal claim. It considered it as an issue of waiver, and then it referred both to the plea memo as it really construed the claim as saying, I was never told about my right to appeal. And it limited it to that. And then it construed it as an issue of waiver. And importantly, we're not in that later situation of deciding whether that was contrary to Flores-Artega or the law at the time, but whether he presented the claim. And he did present the claim. It's not important what they said. But what is important is that they said at the end of their opinion on page 175 of the record that they found that briefing was unwarranted. So that's a denial of his motion that he had filed, because he requested briefing. And then they drop a footnote, footnote three, also on page 175 of the record, which said that it had considered, its words, considered the pro se documents that had been received or filed in this case in the Nevada Supreme Court. So it had received an acknowledged receipt of everything that Buchanan had put before the court. And he squarely put this issue as a federal issue with these facts before the court that he had requested an appeal, and counsel refused. And importantly, he also supplied this letter, which is very powerful evidence. It's more powerful evidence than I've ever seen in this kind of a case, that actually a conversation was had between at least his mother and counsel, where counsel said, I understand you want an appeal, but I don't think you have appeal rights, so go find somebody else to do it. But that doesn't prove that Buchanan asked that attorney to appeal for him. It does not prove that he, I mean, his allegation alone satisfies the exhaustion. What do we do? It just makes it a very compelling case in terms of their atmospherics, which tell us that conversations were had. Let's suppose that the refusal to appeal claim, claim number three, was exhausted. I think that's. And that the district court was wrong in finding that it was not exhausted. All right? Correct. What do we do with this language in the district court's agreement with the plaintiff, I mean, the petitioner? I understand that, as Buchanan, I understand that if I choose to abandon the claims found to be unexhausted by this court, I will not be permitted to raise those claims ever again in any Federal proceeding. Isn't that a flat out waiver? I don't think it's a waiver, because for a couple of reasons. Why? He wasn't told of what his options were. And not that he just wasn't told what his options were. He was told he had two options. But wait just a minute. My understanding is that there were several subficial claims at that, in this earlier stage, which were held unexhausted. But the one that we're talking about now wasn't held unexhausted, right? Isn't that right? It was held exhausted, and the question is, what does it mean? Why does it cover? Ground three, which the court ruled on on the merits, is that what Your Honor is talking about, Judge Beyer? No, I'm not. You're talking about ground one, which he held to be unexhausted. Yes. Ground one is technically where he raised the refusal to file the appeal claim. Ground one is what the court decided on the merits. Right. Exhausted. But your claim now is that ground one, the one that he held unexhausted. Exhausted encompasses the refusal as well, right? Is that not right? Ground three is what he ruled on on the merits. Right. He failed to consider evidence, like the letter, because he had said that the requested file of appeal was unexhausted, which I think was error. But that's always an uncertified issue. Ground one, we maintain, was erroneously held to be unexhausted, and in fact, was exhausted. And I think Judge Beyer's question is, well, didn't he just waive that anyway? Because, yes. Any time you have a waiver of a right of appeal, you're waiving a right of appeal of a ruling that the district court may have got wrong. You don't only waive appeal on the ones that they got right. Well, I understand that. But there are a couple of things, if I could have allowed to respond to that. First of all, a waiver is a waiver when it's knowing involuntary. This is a stock form that says, it's knowing involuntary. I'm waiving it forever. But that's not actually what Buchanan was talking about. So he was basically forced to sign this stock form. He didn't have counsel. Counsel could have told him, you know what? We can appeal this. That option wasn't given to him. He was never told that he could go back to state court and stay and obey his claim, which he could have done. He was told he only had two options. He was given the option to go back and exhaust his two claims, and the court would hold his case under the same number and reopen it when he came back. Isn't that the same as the state? It's not the same to a state petitioner when the court explicitly says, I will not stay this case. How are you supposed to know what that means? Specifically warned him of statute of limitations problems, therefore, that it was not going to take care of his statute of limitations problems. Yes, correct. Had he had counsel, he could have had a couple of other options. One, counsel might have told him that this procedure is sufficient. But the language here doesn't actually tell you that it's sufficient to make you timely when you come back. And also, counsel could have told him that he could have appealed, but he didn't know that he could have appealed. He also requested in his briefing earlier, if you find this claim is unexhausted, I want to amend my petition, which he could have been allowed to do, should have been allowed to do under Rines and Rosas-Lundy, to mimic exactly what was presented in his state court, exactly as worded in state court. That's what he wanted to do. That's at 178 at the record. So that request was ignored. He was forced to take this option. He really had no other choice. And I think any waiver that's not entered knowingly, knowing what the full options are, and really, with the benefit of counsel, this is a very complicated area of law, is not a knowing and valid waiver. So your position is that it's an unconstitutionally invalid waiver because he didn't have counsel? He didn't have counsel. He was misled by the court about what the options were. That's important under Plyler. But I'm still confused about something. I'm looking at page 10 of your brief at the Federal petition, which has ground one, ground two, ground three. Ground three is Petitioner was denied his 14th Amendment right to due process and equal protection when trial counsel acted unreasonably, depriving Petitioner of the only appellate reviewer counsel is mandated. That's the one that was held. Exhausted. All right. Yes. And as an uncertified. In general, it's broad. It would appear to encompass a Flores-Ortega claim. Yes. So why is it, then, that it isn't good enough to go forward on? Well, ground three was held to be exhausted. The court denied it. And we briefed as an uncertified issue that that was wrong. And you're contending that the refusal to file an appeal allegation is subsumed under count three. I think it could be subsumed under count three. It was not specifically alleged, as he alleged in ground three. But just as importantly, the factual allegations, including the letter, indicate that this person had reasonably demonstrated an interest in appealing. That's very clear from the record. And the court did not refuse to consider the letter, because it said that the letter was unexhausted. I understand that. Which was also error. So I think that the court erred in the Flores-Ortega analysis of ground three. And just as importantly, on the certified issue, erred in finding that that was unexhausted. Because it was exhausted. And it's unclear to me why the court referred to his briefing in the Nevada Supreme Court as the brief where he federalized his claims. But refused to acknowledge the fact that he had filed this proper person motion, which was an approved motion under the approved appellate procedure, saying that he wanted to raise the refusal to file claim. OK. Thank you very much. Thank you. Good morning. I'm Eric Levin. And it's my pleasure to appear here today on behalf of respondents in this matter. With respect to the issue on exhaustion, the claim was not exhausted. Which claim were we talking about? We're talking about, I believe it was claim one. The claim where he says that he asked his trial counsel to file an appeal. That fact rendered the claim unexhausted. It's a very critical fact. And as we know under Strickland, IAC claims are fact specific. And this is a critical fact, because depending on whether this fact is alleged or not, it changes the analysis. If someone filed an ordinary civil complaint and put in it, my counsel did not file an appeal without my consent, could that be dismissed for failure to state a claim when the actual facts were that a request was made and refused? In other words, isn't that subsumed? Isn't it a version of without my consent to say that I made the request and it was refused? No, because we know under Flores-Ortega that the analysis, there's two completely different analyses. Well, that may be. And therefore, as the facts develop, it may turn out that he has one, he has the good version of without consent instead of the bad version without consent. But in terms of whether the allegation in the petition is sufficient to encompass an allegation that he made the request and was refused, and many people would say that as the ordinary way of saying it, why isn't that sufficient? I don't think it's sufficient. I know you don't think it, but I want to know why. I would have to disagree with the Court that that's what ordinary people would think. In fact, if you look at this petitioner's various allegations, he uses the terms interchangeably. And sometimes he says, even when he was writing to the State Supreme Court, he says without consent. And an example of that is I made the request and it was refused. That's certainly a way of doing something without consent, not doing something you're asked to do is doing it without consent. Well, I would argue that his factual allegations change with his understanding of the law. Well, that may be legitimate, too, as a matter of fact. I mean, in other words, it was made more generally to begin with because it was adequate to meet the circumstances at that point in its more general form. But as it became clear that the more specific was what was necessary, he made it more specific. That doesn't mean that he didn't mean the same thing the first time. He just didn't have any reason to be more specific at that point. I would think that it's belied. Because if you've just been convicted, I think the fact that you've asked your attorney to file an appeal for you and he didn't, that's going to figure prominently in your petition and your allegations. Except that at the point that he was filing it, it didn't matter what kind of without consent there was. But that's what you're going to be upset about, that you specifically asked this guy to file an appeal for you and he hasn't done it. And yet he doesn't even mention it in his initial State petition. He doesn't mention it in his notice to the court of his Federal questions. The first place that it He did mention it in the State Supreme Court. Not in his notice to the court of his Federal question that he filed. What he mentioned it in was something that he hoped or expected to present if the court allowed him to proceed in form of paupers. That was a motion to proceed in form of paupers. And that's all it was. And we know from Baldwin v. Reese, which was cited by both cases, that And the other thing is it didn't make a bit of difference because the State Supreme Court was totally confused and said that he had waived his right to appeal anyway, which he hadn't. So specifically what he said certainly had no impact on the outcome. Well, that's a different question from exhaustion. But it's relevant to the fact that the greater or lesser specificity would have been useless in any event. And so in terms of fulfilling the functions of exhaustion, it filled it as well as it could have given the fact that the State Supreme Court didn't even get the question anyway. No, I don't think so because the exhaustion only requires the presentation. It doesn't require the State Supreme Court to actually I understand that. You're technically correct. But in terms of what actually happened in this case, that he wasn't allowed to make it more specific and it didn't matter. And I would disagree with that. That's an allegation that's been made without any citation to any court rules. And in this respect, I have to apologize because I'm a little bit on unfamiliar ground. But there is a rule of appellate procedure in Nevada where he was allowed to file a brief. And if the court would permit me, I can cite it. But again, it's not in the briefs that you have before you. Well, it was said in the brief. So it isn't that this was just from you right now. I mean, it was. Oh, I understand. In any case, as I think Baldwin v. Reese says that the court's not required to look beyond the petition, briefs, or other similar documents. It doesn't say any documents. It says similar documents. And I think similar documents are going to be documents such as briefs, petitions, motions for summary judgment, documents that address the merits and the claims. And there's no reason to think that the court's going to be looking at that to see whether or not it presents claims. And we don't even know whether or not the particular justices that ruled in this case ruled on that motion to proceed in form of poppers, whether it might have been one or the whole panel. And again, it's Mr. Buchanan's burden to both plead and prove exhaustion. So we don't have that information. Now, do you think that we have to decide – I'm a little confused about how these pieces fit together, as Judge Bea's questions earlier suggested. The count one was dismissed as unexhausted, and he then refiled a complaint that didn't have it in it, is that right? I don't know that he refiled a complaint. He made an election, however, to not proceed with it. Correct. And then the district judge decided to count three, which is a broad count, or a ground three. And then we certified two questions, one of which is whether the district court erred in determining that appellant's factual basis for expressing his desire to appeal was unexhausted. Now, do we have to decide the second question before we can get to the first question, or what? How do the pieces fit together? That's a good question. I actually hadn't looked at it that way. I'm certainly prepared to argue that the answer to the second question as well, whether or not you need to decide one before the other, I did not look at. But I don't think so. I can take a moment to address the second question. Mr. Buchanan filed his 2254 petition in December of 2000, and Judge Reed issued his order regarding the petitioner's election on March 8, 2002. Kelly v. Small was first filed on August 27 of 2002 and amended in January 2003. So Kelly had not even been decided at the time that Judge Reed issued his order. And then he amended Snow Longer the law. And prior to Kelly, of course, it was within the district court's discretion whether or not stay in abeyance would be provided. So contrary to what counsel said, Mr. Buchanan did not have a right to stay in abeyance at that time. All right, so what about now under Rhines? Is it your understanding that if the conditions set out in Rhines are met, then the district court has to stay in or not? I think the conditions set out in Rhines currently give guidance to when the district court should offer to stay in abeyance. Right now, I don't know that it actually mandates it. And of course, Rhines, I don't think there's any cases holding that Rhines or Kelly applies retroactively. So I think what the district court did in this case, at the time it did, it was correct. And there's no reason to reverse that decision with respect to the election that was given to Mr. Buchanan. I don't understand what you mean by Rhines doesn't apply retroactively. It applies retroactively in the same sense that any case applies retroactively. It's a statement of the law, and it applies, no? Well, yes, it applies. But we don't have to go back to every case where the thing is. Why not? This is a live case. It's still, you know, tooling along. That's the way we do law. I think it's the appeal is live, but the case has been decided. I just don't – I'm a little bit unprepared with respect to Rhines, I guess. But in addition, that's just not the certified issue. It is a certified issue. You're saying because it says pursuant to Kelly v. Small, the fact that not Kelly v. Small is in the law anymore, the whole issue is out the door? A certified issue, yes. So you think there's no certified issue having to do with whether the judge properly refused to issue a stay or a ban, so we just can't address it? With respect to Kelly v. Small, yes, that's the issue. So you think there's no issue left on that? On Kelly? No, on anything. Are you suggesting that we can't answer the question under Rhines that was originally raised under Kelly? Are you suggesting that there is no certified issue in this case now with regard to whether the judge properly refused to grant some sort of stay and abeyance? Yes, because what Kelly v. Small did was said it was mandatory. And that's just simply not the case. So because this Court happened to state the issue a little bit too specifically, the guys has no, we can't decide the issue? Even though we know what was meant and we know that the law has changed in the meanwhile? Well, that was the issue that was certified and that's the issue that was briefed and I came prepared to argue. But we know that Kelly v. Small, that's not the position you took in your brief. I didn't understand you to be saying that the whole question is now out the door. Is that what you said in your brief? I think in the brief it said Kelly had been overruled. Yes, it has been, right? And so we don't deal with the law as it is now? We just leave the whole thing and don't decide it at all? Well, if you wanted to, if this Court wanted a briefing and argument under Rhines, I think that's the issue that would have to be certified. Okay, thank you. Do you want to briefly address that last point? I think actually that my reply brief does address that last point, which is they did say that the issue was out the door. And I argued that the real issue here is whether he was misled because under Robbins, the Court is no longer required to give advisements about what your options are. But under Plyler, the Supreme Court really expressed concern about why he was misled because the district judge told him what he would do. He didn't tell him what he could do. The district court said I am not going to do this. So unless he had had to do it, what he advised him of is I am not going to allow you to do X. You said these are your only options. These are your only options because that's what I'm deciding. I'm deciding those are your only options. So the question is whether under Rhines he could do that. But it isn't really exactly. And I suppose if he couldn't do it under Rhines, then it might be misleading. It was, I mean, this is a much stronger case than what this Court was concerned about in the Ford case that preceded Plyler. This is much more egregious than what was happening there. So I mean, I would encourage you to look at sort of the timing issue there versus what was here because he said he wouldn't stay. The one thing I wanted to point out is that Mr. Buchanan was making his refusal to file an appeal claim in the Nevada Supreme Court two years before Roe versus Flores-Ortega was decided. That is a genuine factual allegation. They have accused him of trying to sort of game the system. No, he was just saying what had happened. And he was trying to do it in the Supreme Court because he was shut out of the district court. Okay. Thank you. Thank you. Thank you both again for a useful argument in a confusing case. Thank you. The case of Buchanan versus Farmwell is submitted. And another Buchanan, Buchanan versus Standard Insurance.
judges: Berzon, Bea, Gibson